FENELEY v. KIMMELL.

1. PROPERTY—TIMBER CUT FROM LAND UNDER CONTRACT IS PERSONAL PROPERTY.

Timber cut from land before the expiration of the time limited for its being cut and removed under a contract for its cutting and removal is personal property.

2. LOGS AND LOGGING—FORFEITURE OF TIMBER.

A contract, written in unequivocal language, which forfeits all timber to vendor not removed by purchaser from the premises by time of expiration three years and two days later, is not an unconscionable one by reason of such forfeiture.

3. SAME—CONSTRUCTION OF CONTRACTS—TIMBER.

The word "timber," as used in contract for cutting and removing timber from a 40-acre tract, includes logs as well as trees.

Appeal from Luce; Runnels (Herbert W.), J. Submitted June 5, 1947. (Docket No. 38, Calendar No. 43,763.) Decided October 13, 1947. Rehearing denied December 3, 1947.

Bill by George A. Feneley against Fred A. Kimmell for determination of rights in certain logs, an injunction and other relief. Decree for defendant. Plaintiff appeals. Affirmed.

*Glenn W. Jackson,* for plaintiff.

*Hudson, Coates & Kline,* for defendant.

REID, J. Plaintiff filed his bill of complaint to obtain the construction of a written contract relative to the sale of merchantable timber and trees standing on 40 acres of ground owned by the defendant. The litigation has reference to logs cut by plaintiff and left lying upon the premises of defendant. The bill prays for equitable relief against forfeiture of title to the logs and that defendant be temporarily and permanently restrained from disposing of the logs, and for compensation and damages by reason of the deterioration and loss in value of the logs. The trial judge determined that the title to the timber in controversy is in the defendant, and that plaintiff has no interest therein. From the decree for the defendant, plaintiff appeals. The agreement in question, to which a certificate of acknowledgment is appended, is as follows:

## "AGREEMENT

"This agreement made this 29th day of August, 1942,

"By and between Fred A. Kimmell, a single man, of Newberry, Michigan, hereinafter called the vendor, of the one part and George A. Feneley, a mar-

ried man, of Engadine, Michigan, hereinafter called, the purchaser of the other part.

"Witnesseth as follows:

"(1)   That the said vendor agrees to sell and the said purchaser agrees to purchase, for the sum of $1,200, on which a deposit of $500 has now been paid, and the balance of $700 which is to be paid on September 1, 1942, all the merchantable timber and trees now standing and growing on a certain parcel of land situated in the township of Columbus, Luce county, in the State of Michigan, and described as follows, to-wit:

"The northeast quarter of the northeast quarter (NE¼NE¼ of section twenty-eight (28), township forty-seven (47) north, range twelve west (12W).

"(2)   The said vendor hereby grants unto the said purchaser and his assigns the full and free license and authority to enter into and upon the said land with his servants, agents and workmen, and to cut down said timber and trees, to build roads for the removal of said timber and trees; and to remove the said timber or trees, when and as he, said purchaser, or his assigns, shall think proper and within the time hereinafter limited;

"And the said purchaser further agrees to cut and remove the said timber or trees on or before the first day of September, 1945.

"(3)   It is mutually agreed between the parties hereto that the payment of the taxes are to be paid by the party in possession of the said land on the assessment day; to-wit:

"April first of each year during the term of this agreement; if the said purchaser hereby agrees to release any of the timber on the said premises, he is to obtain a release of the taxes for that particular year.

"(4)   It is hereby expressly understood between the parties hereto that any and all timber remaining upon the said premises after September 1, 1945, is

to be forfeited to the vendor, his heirs or assigns and further that this agreement shall end and cease on the aforementioned day. It is also agreed herein that this agreement hereby binds the heirs, representatives, or assigns of the respective parties hereto.

"In witnesseth wherefore, the parties have hereunto set their hands and seals the day and year written above.

### VENDOR

"Signed, Sealed and delivered in the presence of:

/s/ FRED A. KIMMELL
——————————————
FRED A. KIMMELL

### PURCHASER

"/s/ J. P. SHIMMENS
——————————————
J. P. SHIMMENS

/s/ GEORGE A. FENELEY
——————————————
GEORGE A. FENELEY

"/s/ NADEMA SHIMMENS
——————————————
NADEMA SHIMMENS" ·

The one real question involved in this case is whether after September 1, 1945, defendant was the owner of the logs still remaining upon his 40 acres. Plaintiff cites *Kerschensteiner* v. *Northern Michigan Land Co.,* 244 Mich. 403. The parts of that lengthy opinion which are of value to us in the case at bar are found on pages 442, 443 and 444 and are as follows, beginning on page 442:

"The *habendum* clause of the deed provided:

" 'To have and to hold said timber until the said first day of April, 1924, unto said party of the second part and its assigns, *provided however, that all timber standing on said lands on the first day of April, 1924, shall be and become the property of the first parties as their respective interests may appear.*' "

Further, on page 443:

"Plaintiffs claim the logs and forest products cut from standing timber on the lands conveyed by this deed reverted on April 1, 1924, the logs having been stored on some of the lands described in the deed, although not upon the particular descriptions upon which the timber stood and from which it had been removed.  *  *  *  The timber cut from the land before the expiration of the time limited for its being cut and removed was, under the rule of *Hodges* v. *Buell*, 134 Mich. 162, personal property."

Further, on page 444,

"The timber which had been cut from the premises and stored for shipment was cut and removed within the meaning of this deed. *Hodges* v. *Buell*, *supra; Austin* v. *Brown*, 191 N. C. 624 (132 S. E. 661).  *  *  *  We think the timber under this deed was so far cut and removed from the premises upon which it stood as not to be affected by the doctrine governing estates in reversion, that it was personal property, and, as such, the title thereto was vested in the purchasers thereof. *Williams* v. *Flood*, 63 Mich. 487; *Macomber* v. *Railroad Co.*, 108 Mich. 491 (32 L. R. A. 102, 62 Am. St. Rep. 713); *Hodges* v. *Buell*, *supra; Austin* v. *Brown*, *supra*."

The habendum clause in the deed in the *Kerschensteiner Case* greatly differs from the agreement in the case at bar.

Plaintiff also cites our decision in *Hodges* v. *Buell*, 134 Mich. 162, but to construe the word "remove" in this case to mean remove from stump (as indicated in the *Hodges Case*) will not aid the plaintiff because it is conceded that the timber was not taken away from the premises and the language of the contract in that particular is unequivocal and free from doubt. The timber under the contract in question had to be taken off the premises entirely before

September 2, 1945. There is no escape from the force of the words, "All timber remaining upon the said premises after September 1, 1945, is to be forfeited to the vendor, his heirs or assigns." Those words differentiate the case at bar from both the *Hodges Case, supra,* and the *Kerschensteiner Case, supra.*

To rule with plaintiff we would be required to strike out the express recitals of paragraph (4) of the agreement and give force only to plaintiff's inference as to the meaning of paragraph (2).

It was competent for the parties to agree that all the timber remaining upon the premises after September 1, 1945, should be forfeited to the vendor, his heirs and assigns. The contract was not unconscionable. The plaintiff had three years and two days in which to carry out the conditions of his agreement, evidently a sufficient length of time if he had gone about that business seasonably. We have no way of ascertaining what plaintiff's real motive was in not taking off the timber seasonably while he had an abundance of opportunity so to do. Defendant was under no obligation to extend the time.

When plaintiff felled the trees, the felled timber became the personal property of plaintiff, conditioned, however, upon removal of the timber from the premises in question before September 2, 1945.

In *Hodges* v. *Buell,* 134 Mich. 162, we say at page 169,

"Where one acquires title to standing timber, the same to be removed within a time stated, he cannot be devested of his title to such as he severs from the soil during the period, whether he takes it away from the premises within such period or not (except where, as in *Gamble* v. *Gates,* 92 Mich. 510, it is expressly provided that such timber should revert)."

Therefore, the case of *Hodges* v. *Buell,* cited in the *Kerschensteiner Case,* plainly contemplates that where it is provided such timber should revert, there is an exception which we recognize. In *Gamble* v. *Gates,* 92 Mich. 510, we say at page 514,

"The plain intent of the agreement was that, even if the conditions and agreements had otherwise been performed, all timber remaining upon said lands at the expiration of the time limited, *whether cut or uncut,* (italics supplied), should *revert* and become the property of Gamble. The word 'revert' has some significance. The use of it clearly shows that, if the title had passed to Gates by the fulfillment of the contract, still all the timber left and remaining upon the lands at the end of five years should revert and pass back to Gamble."

Plaintiff claims that if the word "timber" is to be construed as referring to logs cut, then the seller is seeking to enforce an inequitable forfeiture within the holding of *Hodges* v. *Buell, supra,* but as above noted, in *Hodges* v. *Buell, supra,* a chancery case, we still say on page 169 that an express provision that the timber should revert is to be excepted out from any statement that the vendee can not be divested of his title. As we have before noted, it was competent for the parties to this case to make the particular agreement that they did make. Equity could refuse to enforce a forfeiture which might arise by a doubtful implication but there is no showing in this case of any reason why plaintiff should be relieved from the direct effects of his own express contract, plainly written in unequivocal language.

The plain meaning of the word "timber" is to include trees, whether felled or standing, that are suitable to be used for building. *Ladnier* v. *Ingram Day Lumber Co.,* 135 Miss. 632, 640 (100 South. 369, 370); *Kaul* v. *Weed,* 203 Pa. 586, 591 (53 Atl. 489,

490); *Gulf Yellow Pine Lumber Co. v. Monk,* 159 Ala. 318 (49 South. 248); *Great Southern Lumber Co. v. Newsom Bros.,* 129 Miss. 158, 167 (91 South. 864, 865); *Nettles v. Lichtman,* 228 Ala. 52, 55 (152 South. 450, 453, 91 A. L. R. 1455); *Jasper Land Co. v. Manchester Sawmills,* 209 Ala. 446, 448 (96 South. 417, 418). See 41 Words and Phrases, 630, 631.

The word "timber" as used in the agreement in this case must be construed to include logs as well as trees.

The decree appealed from is affirmed. Costs to the defendant.

CARR, C. J., and BUTZEL, BUSHNELL, SHARPE, BOYLES, NORTH, and DETHMERS, JJ., concurred.